**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

TERRILL WALKER,                            )
                                           )
        **Plaintiff,**                   )
                                           )
vs.                                        )   **Case No. 3:24-CV-1171-MAB**
                                           )
DARREN GALLOWAY,                           )
                                           )
        **Defendant.**                   )

## MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

This matter is currently before the Court on the motion for summary judgment on the issue of exhaustion filed by Defendant Darren Galloway (Doc. 60). Also before the Court is Plaintiff's motion for leave to supplement his response to the motion for summary judgment based on the Supreme Court's recent decision in *Perttu v. Richards*, 605 U.S. 460 (2025), which held that a jury trial is required to resolve factual disputes related to exhaustion when they are intertwined with the merits of the claim. *Perttu*, 605 U.S. at 479.

For the reasons explained below, Defendant's motion for summary judgment on the issue of exhaustion is granted because there are no genuine disputes of material fact and Defendant is entitled to judgment as a matter of law that Plaintiff failed to take all steps to exhaust his available administrative remedies. This in turn renders Plaintiff's motion to supplement moot.

### BACKGROUND

Plaintiff Terrill Walker, an inmate of the Illinois Department of Corrections ("IDOC") brought this action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights at Shawnee Correctional Center. His original complaint, filed on April 25, 2024, against Defendant Darren Galloway, who is the warden at Shawnee, alleges that Plaintiff was denied access to recreational opportunities while in segregation, in violation of the Fourteenth Amendment (Doc. 16; *see also* Doc. 1). The original complaint was dismissed for failure to state a claim (Doc. 16). Plaintiff was given a chance to file an amended complaint, which he did on July 3, 2024 (Doc. 19). In the amended complaint, Plaintiff once again alleges that the denial of recreational time while he was in segregation violated his constitutional rights (*see* Doc. 19).

Following a threshold review of the complaint pursuant to 28 U.S.C. § 1915A, Plaintiff was permitted to proceed on the following Counts against Warden Galloway:

> **Count 2:** Fourteenth Amendment equal protection claim for denying Plaintiff access to the yard because of a drug disciplinary infraction;
>
> **Count 3:** Eighth Amendment conditions of confinement claim for denying Plaintiff access to the yard or other forms of recreation for the 90-days he spent in segregation.

(Doc. 23).

Defendant Galloway filed a motion for summary judgment on the issue of exhaustion, arguing that while Plaintiff filed various grievances during the applicable time period, none of them went through all the steps of the grievance process and, therefore, were not fully exhausted (Doc. 60). Plaintiff filed a response in opposition,

claiming he filed other grievances not mentioned by Defendant that went unanswered (Doc. 63; *see also* Doc. 66, 67). Defendant then filed a reply brief (Doc. 72). Thereafter, Plaintiff filed a motion asking to supplement his response due to a change in the law, namely the Supreme Court's decision in *Perttu v. Richards*, 604 U.S. 460 (2025). Defendant filed a response at the Court's behest (Doc. 77; *see also* Doc. 74).

## PLAINTIFF'S RESPONSE BRIEF

Before discussing the merits of the motion for summary judgment, there are some issues that the Court must address with Plaintiff's response brief.

Plaintiff timely filed a response in opposition to the motion for summary judgment, with 18 pages of exhibits attached (Doc. 63). A week later, Plaintiff filed another response brief (Doc. 66). The Court initially received only seven of seventeen page (Doc. 66); the other ten pages arrived four days later (Doc. 67). Plaintiff did not provide any explanation as to why he submitted a second response brief (*see* Docs. 66, 67). As best the Court can tell, the second response is largely duplicative of the first response, with only some minor variations. Defendant opted to reply to Plaintiff's second, two-part response (*see* Doc. 72). Therefore, that will be the response brief that the Court also considers, except where otherwise noted.

Plaintiff's response brief is also structured in a very confusing manner. While Plaintiff addressed each of the facts set forth in Defendant's Statement of Material Facts, he did not do so within a section clearly delineated as a "Response to the Statement of Material Facts," as required by the Local Rules (*see* Docs. 63, 66, 67). SDIL-LR 56.1(b). Rather he responded to the Statement of Facts in a piecemeal fashion throughout the

response brief, with argument interspersed (*see* Docs. 63, 66, 67). Additionally, he included additional material facts in his response brief but not in a section labeled "Statement of Additional Material Facts," like the Local Rules require (*see* Docs. 63, 66). SDIL-LR 56.1(c). His additional facts are instead primarily contained within the section of his brief titled "Introduction," although there are others sprinkled in elsewhere in the brief (*see* Docs. 63, 66). Defendant responded to some, but not all of Plaintiff's additional material facts (*see* Doc. 72), which is understandable considering the manner in which Plaintiff presented his facts.

Even though Plaintiff's factual allegations were not properly presented, the Court nevertheless elects to consider them in light of his pro se status and the fact that he swore to the facts under penalty of perjury (*see* Doc. 63, p. 1; Doc. 66, p. 1). *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (a "document filed *pro se* is to be liberally construed"). *See also Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004) (factual assertions in response brief declared to be true under penalty of perjury comply with Rule 56 affidavit requirement); FED. R. CIV. P. 56, Advisory Comm. Notes, 2010 Amendment, subdiv. (c) ("A formal affidavit is no longer required. 28 U.S.C. § 1746 allows a written unsworn declaration, certificate, verification, or statement subscribed in proper form as true under penalty of perjury to substitute for an affidavit."). In the interest of fairness, however, Plaintiff's facts that Defendant did not address will not be deemed admitted for purposes of this Order. *See* SDIL-LR 56.1(g).

### LEGAL STANDARD

Summary judgment is appropriate if the movant shows there is no genuine issue

as to any material fact and they are entitled to judgment as a matter of law. FED. R. CIV.

P. 56(a). In deciding a motion for summary judgment, the court's task is to view the record

and draw all reasonable inferences in the light most favorable to the non-moving party

and decide if there is a genuine material dispute of fact. *Stewart v. Wexford Health Sources,*

*Inc.*, 14 F.4th 757, 760 (7th Cir. 2021); *Hansen v. Fincantieri Marine Grp., LLC*, 763 F.3d 832,

836 (7th Cir. 2014). Courts ordinarily cannot decide factual disputes on a motion for

summary judgment. *See, e.g., Roberts v. Neal*, 745 F.3d 232, 234 (7th Cir. 2014) ("[A] trial is

the standard means of resolving factual disputes . . . ."). The Seventh Circuit has

instructed, however, that when the factual dispute relates to exhaustion of administrative

remedies, the dispute should be resolved by the judge as a preliminary matter in an

evidentiary hearing known as a *Pavey* hearing. *Smallwood v. Williams*, 59 F.4th 306, 315

(7th Cir. 2023) (citing *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008)). But in 2025, the

Supreme Court held that factual disputes related to exhaustion must be resolved by a

jury if they are intertwined with the merits of the claims in the case. *Perttu v. Richards*, 605

U.S. 460, 479 (2025). That being said, when a prisoner does not raise sufficient factual

allegations to demonstrate a genuine dispute of material fact, then no evidentiary hearing

is necessary. *Jackson v. Esser*, 105 F.4th 948, 957 (7th Cir. 2024) (citing *Smallwood*, 59 F.4th

at 318). The Court has reviewed both sides' briefs and determined that there are no

genuine issues of material fact that require an evidentiary hearing in order to decide the

motion for summary judgment.[1]

---

[1] Having carefully reviewed the briefs and determined that there are no material factual disputes that
would require an evidentiary hearing, it necessary follows that there are no factual disputes related to the

<u>FACTS</u>

The Court will begin with Defendant's version of the facts. Defendant searched the grievance log at Shawnee and the ARB's grievance records (*see* Doc. 60). According to Defendant, Plaintiff submitted two grievances at Shawnee in April 2024, and another directly to the ARB, about the lack of recreation time (*see* Doc. 60, pp. 2–3).[2]

The first grievance is non-emergency grievance #K19-24-04-41, dated April 1, 2024 (Doc. 60-1; Doc. 60-2; *see also* Doc. 63, pp. 24–27 (copy of grievance provided by Plaintiff); Doc. 72-1 (copy of grievance provided by Defendant with reply brief)). It was received at the facility on April 5, 2024 (Doc. 60-1; Doc. 60-2). That same day, the grievance was sent to the counselor for first level review, and a receipt was sent to Plaintiff informing him that the grievance had been received (Doc. 60-1; Doc. 60-2). The grievance was returned to Plaintiff with the counselor's response on May 30, 2024 (Doc. 63, p. 25). There is no indication that Plaintiff submitted the grievance to the grievance officer for second level review (*see* Doc. 60-1; Doc. 60-2).

The second grievance is emergency grievance #K19-24-04-34, dated April 2, 2024, which was received on April 5, 2024, sent to the warden that same day, and deemed a non-emergency (Doc. 60-1; Doc. 60-2; *see also* Doc. 63, pp. 22–23 (copy of grievance provided by Plaintiff)). It was returned to Plaintiff on April 8, 2024 (Doc. 63, p. 22). There

---

exhaustion process that are *intertwined* with the ultimate merits of Plaintiffs' claims that would implicate the Supreme Court's holding in *Perttu* as Plaintiff suggests.

[2] There were other grievances that Plaintiff filed at Shawnee and directly with the ARB, (*see* Doc. 60, pp. 2–3; *See also* Doc. 60-1, Doc. 60-2, Doc. 60-3), but a review of them reveals they do not pertain to the facts underlying Plaintiff's claims in this case. Because they are not about the loss of recreation time, they cannot serve to exhaust Plaintiff's claims and, therefore, the Court declines to discuss them in any detail.

is no indication that Plaintiff re-submitted the grievance through the standard grievance process, like he was instructed to do and like the regulations require (*see id.* at pp. 22–23; *see also* Doc. 60-1).

The grievance submitted directly to the ARB about the lack of recreation time was dated April 9, 2024 (Doc. 60-3, pp. 2–4). In this grievance, Plaintiff complains, in pertinent part, that he has not been permitted any recreation since he was taken to segregation on February 15th (*Id.*). Plaintiff also states that he submitted grievances on March 8th and March 20th but has received no responses and so he is asking the ARB to consider his grievance as an emergency (*Id.*). On May 8, 2024, the ARB sent the grievance back to Plaintiff without review because it did not include any responses from the facility (*Id.*).

As for Plaintiff's version of events, his story is broader, incorporating the grievances discussed by Defendant and including additional details, while also discussing additional grievances that purportedly went unanswered (*see* Docs. 63, 66, 67). Plaintiff says he submitted two grievances *prior* to the April 2024 grievances that Defendant discussed. He claims that he submitted the first one on March 8, 2024, after he was denied access to the yard that day (Doc. 66, p. 2; *see also* Doc. 1, p. 2). Plaintiff submitted a second grievance on March 20, 2024, after he spoke with Lt. Johnson about being denied yard (Doc. 66, p. 2; Doc. 1, p. 2).

According to Plaintiff, he wrote duplicate copies of both of the March grievances to prove they were filed in the event that either of them were lost or thrown away by prison officials (Doc. 66, p. 7). He attached those copies to his response brief (Doc. 63, pp. 29, 30–31). (The first is dated March 7, 2024 — not March 8th, like Plaintiff represented.)

Both March grievances indicate that they were submitted as non-emergency grievances (*see* Doc. 63, pp. 29, 30). Plaintiff says that he never received a response to either grievance (Doc. 66, p. 7). Plaintiff did not include any information about how he submitted the March grievances (*e.g.*, placing them in the locked grievance drop box, putting them in the bars of his cell for pickup, handing it to his counselor, etc.) (*see* Docs. 63, 66, 67). He also does not indicate whether he asked anyone about the status of these grievances (*see* Docs. 63, 66, 67).

Plaintiff goes on to say that "[o]n April 2, 2024, after not receiving a response or a receipt through the grievance mailing system," he submitted a third grievance to Counselor Z. Moore and a fourth grievance directly to Warden Galloway (Doc. 66, p. 2; *see also* Doc. 1, p. 2). The Court believes these are grievances K19-24-04-41 and K19-24-04-34, mentioned by Defendant and discussed above (although the former is dated April 1st, not April 2nd, like Plaintiff stated). Notably, neither of these grievances contain any mention that previous grievances submitted in March went unanswered (*see* Doc. 63, pp. 22–27; Doc. 72-1).

Plaintiff's records show that he received a receipt for the non-emergency grievance submitted to the counselor (K19-24-04-41) (*see* Doc. 63, p. 24). Plaintiff's records also show that the other grievance (K19-24-04-34) was deemed a non-emergency and returned to him on April 8, 2024 (*see* Doc. 63, p. 22). Plaintiff admits he did not re-submit grievance K19-24-04-34 through the regular grievance process like he was instructed, instead arguing that Warden Galloway was wrong in not handling the grievance as an emergency (Doc. 66, pp. 4–5).

Rather, Plaintiff's next step was "following the advice of Lt. Johnson and Ms. Sanduski from the Mental Health Department," and submitting a grievance directly to the ARB on April 9, 2024 (Doc. 66, p. 3). This is the April 9th grievance mentioned by Defendant and discussed above.

Plaintiff's complaint in this matter was docketed on April 25, 2024 (Doc. 1). Thereafter, as previously stated, on May 8th, the ARB returned the April 9th grievance to Plaintiff without review, and on May 30th, grievance K19-24-04-41 was returned to Plaintiff with the counselor's response. It is undisputed that Plaintiff did not submit grievance K19-24-04-41 to the grievance officer for second level review (*see* Docs. 63, 66, 67). Rather, Plaintiff says he received the counselor's response "and thereafter filed the required appeal on June 9, 2024," which has gone unanswered (Doc. 66, p. 6; Doc. 63, p. 8; *see also* Doc. 63, p. 27). This so-called "appeal" is just another grievance form, which begins, "I am appealing the finding of counselor Z. Moore in grievance number K19-24-0441" (Doc. 63, p. 27). There is no indication on the face of the grievance, and Plaintiff does not state in his brief, who he submitted this "appeal" to (*see* Docs. 63, 66, 67).

### DISCUSSION

The Prison Litigation Reform Act provides that a prisoner may not bring a lawsuit about prison conditions unless and until he has exhausted all available administrative remedies. 42 U.S.C. § 1997e(a). In order for a prisoner to properly exhaust his or her administrative remedies, the prisoner must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). *Accord Pyles v. Nwaobasi*, 829 F.3d 860, 864 (7th Cir. 2016) ("[A]

prisoner must comply with the specific procedures and deadlines established by the prison's policy.") (internal quotation marks and citation omitted). Failure to do so means failure to exhaust. *Riccardo v. Rausch*, 375 F.3d 521, 524 (7th Cir. 2004).

As an inmate in the IDOC, Plaintiff was required to follow the grievance process outlined in the Illinois Administrative Code to exhaust his claims. 20 ILL. ADMIN. CODE § 504.800, *et seq.* (2017). The standard grievance process requires the inmate to first submit their grievance to their counselor and then to the grievance officer to issue a recommendation to the warden, who then provides the inmate with a written decision on the grievance. *Id.* at §§ 504.810(a), 504.830(e). If, however, the inmate designates the grievance as an emergency, it is submitted directly to the warden. 20 ILL. ADMIN. CODE § 504.840. If the warden finds that an emergency exists, then the grievance will be handled on an expedited basis by the grievance officer; the grievance bypasses the counselor entirely. *Id.* On the other hand, if the warden determines that the grievance should not be handled on an emergency basis, the inmate is notified and must resubmit the grievance through the standard grievance process. *Id.* Regardless of whether the grievance was processed in the normal manner or as an emergency, if the inmate is unsatisfied with the warden's decision, he or she has thirty days from the date of the warden's decision to appeal to the Administrative Review Board ("ARB"). 20 ILL. ADMIN. CODE § 504.850(a). The ARB submits a written report of its findings and recommendations to the Director of the IDOC, who then makes a final decision. *Id.* at § 504.850(d), (e).

Defendant argued that Plaintiff understood how to use the grievance process (Doc. 60, pp. 6–7), which Plaintiff did not dispute (*see* Docs. 63, 66, 67).

Page 10 of 18

### A. Cut-off Date for Exhaustion

As an initial matter, the Court will discuss the date by which Plaintiff had to exhaust his administrative remedies. The PLRA states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility *until such administrative remedies as are available are exhausted*." 42 U.S.C. § 1997e(a) (emphasis added). "By its plain terms, the PLRA requires prisoners to exhaust administrative remedies *before* filing suit; a 'sue first, exhaust later' approach is not acceptable." *Chambers v. Sood*, 956 F.3d 979, 984 (7th Cir. 2020) (citing *Ford v. Johnson*, 362 F.3d 395, 398–400 (7th Cir. 2004)). Additionally, the Seventh Circuit has held that, for purposes of the PLRA's exhaustion requirement, "an action is 'brought' . . . when the complaint is tendered to the district clerk." *Ford*, 362 F.3d at 400. *See also Taylor v. Brown*, 787 F.3d 851, 858 (7th Cir. 2015) (under the prison mailbox rule, a prisoner's complaint is deemed filed "at the moment the prisoner places it in the prison mail system, rather than when it reaches the court clerk") (citation omitted).

Here, Plaintiff's allegations against Warden Galloway based on the denial of recreation time in segregation were first raised in the original pro se complaint (*see* Doc. 1). Therefore, the operative date for determining exhaustion is the date he tendered his original complaint for filing. *See Chambers,* 956 F.3d at 984–85; *Gakuba v. Pannier*, No. 21-1961, 2022 WL 1768843, at *2 (7th Cir. June 1, 2022) (unpublished). Plaintiff's original complaint was signed on April 18, 2024 (Doc. 1, p. 4; *see also id.* p. 5).[3] The Court assumes

---

[3] It was postmarked on April 23, 2024, (Doc. 1, p. 6), and received by the Clerk of Court and docketed on April 25, 2024 (*see* Doc. 1).

that Plaintiff put his complaint in the prison mail system to be mailed to the Court on the same date that he signed it. Therefore, Plaintiff had to have exhausted his claims by April 18, 2024, but certainly by the date the complaint was postmarked, which was April 23, 2024 (*see* Doc. 1, p. 6).

### B.   Did Plaintiff Exhaust in Time or Was the Process Rendered Unavailable?

The Seventh Circuit requires strict compliance with the exhaustion requirement. *E.g., Smallwood v. Williams*, 59 F.4th 306, 313 (7th Cir. 2023). However, the PLRA "does not demand the impossible," and a prisoner need not exhaust remedies that are "genuinely unavailable or nonexistent." *Id.* (citation omitted). Availability means that the remedy is "'capable of use' to obtain 'some relief for the action complained of.'" *Ross v. Blake*, 578 U.S. 632, 642 (2016) (citation omitted). The primary circumstance in which an administrative remedy is made unavailable is "affirmative misconduct" by prison officials that prevents prisoners from pursuing administrative remedies. *Hernandez v. Dart,* 814 F.3d 836, 842 (7th Cir. 2016) (citing examples, such as, when officials do not respond, tell the inmate they cannot file a grievance, refuse to provide grievance forms, threaten the inmate, etc.). *See also Ross*, 578 U.S. at 644 (explaining that one of the circumstances in which administrative remedies are unavailable is "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."). But a grievance procedure can also be unavailable even in the absence of affirmative misconduct. *Lanaghan v. Koch,* 902 F.3d

683, 688 (7th Cir. 2018) (citing examples, such as, when the inmate is physically incapacitated). "Therefore, the proper focus is not whether prison officials engaged in affirmative misconduct, but whether [the prisoner] was not able to file a grievance within the allowable time period through no fault of his own." *Id.*

In instances where the grievance process is rendered unavailable, "the prisoner is considered to have exhausted his administrative remedies." *Pyles v. Nwaobasi,* 829 F.3d 860, 864 (7th Cir. 2016) (citation omitted). Because exhaustion is an affirmative defense, "the burden of proof is on the defendants to establish that administrative remedies were not exhausted, and not on the prisoner to show that administrative remedies were unavailable." *Smallwood*, 59 F.4th at 315 (citations omitted).

The Court will start its discussion with the March 2024 grievances. To the extent that there is a factual dispute as to whether Plaintiff filed two grievances in March 2024 that went unanswered, the Court finds this dispute does not need to be resolved in order to decide the motion for summary judgment. That is because, even if the two March grievances went unaccounted for, Plaintiff's own story establishes that the grievance process nevertheless remained available to him. At some point prior to April 1, 2024, Plaintiff came to believe that he was not going to receive a response to either of his March grievances (presumably because he did not receive receipts for either of them). Plaintiff chose to address the situation by filing additional grievances on the same issue of recreation time. He filed a non-emergency grievance (K19-24-04-41) on April 1st (or 2nd) and an emergency grievance (K19-24-04-34) on April 2nd. The facility acknowledged receiving those grievances and processed them. The evidence thus plainly demonstrates

that Plaintiff continued trying to use the grievance process to give the facility a chance to right the supposed wrong, and the process was available and functioning properly with respect to his additional grievances. "While . . . an inmate is not required to repeatedly avail himself of a process that does not work or is a dead-end," *Goings v. Ampier*, No. 19-CV-888-DWD, 2024 WL 1072026, at *2 (S.D. Ill. Mar. 12, 2024); *see also* 20 ILL. ADMIN. CODE § 504.810, *et seq.,* the evidence shows that Plaintiff did not face a situation of genuine unavailability. This is because even if officials failed to respond to Plaintiff's two March grievances, Plaintiff was still able to file a grievance regarding the lack of recreation within the allowable time period, which the facility acknowledged it had received. *Cf. Brown v. Reiman,* No. 23-CV-1554-RJD, 2025 WL 636629, at *6 (S.D. Ill. Feb. 27, 2025) (holding grievance process was not rendered unavailable where prisoner was advised by his counselor that grievance had not been received, he was instructed to resubmit it, and he still had ample time to do so within the 60-day timeframe set forth in the regulations); *Roberson v. Morris*, No. 3:20-CV-1147-MAB, 2022 WL 374921, at *6 (S.D. Ill. Feb. 8, 2022) (same); *Goings v. Jones*, No. 19-CV-888-DWD, 2023 WL 4591763, at *8 (S.D. Ill. July 18, 2023) (same). *See also Dole v. Chandler*, 438 F.3d 804, 810, 811 (7th Cir. 2006) (holding inmate exhausted where he submitted his appeal to be mailed to the ARB and it was mishandled by prison officials but he "had no means of being alerted that the ARB had not received his appeal in time to file a new, timely complaint" nor was he given instructions on how to proceed after his grievance was lost).

Having found that remedies were available to Plaintiff, exhaustion was required. That brings the Court to the question of whether Plaintiff fully exhausted either the non-

emergency grievance (K19-24-04-41) dated April 1st (or 2nd) or the emergency grievance (K19-24-04-34) dated April 2nd prior to filing suit. The undisputed evidence demonstrates that Plaintiff did not.

Non-emergency grievance (K19-24-04-41) was dated April 1, 2024, and Plaintiff was notified that it was received by the facility on April 5th. Plaintiff waited just thirteen days—until April 18th—before putting his complaint in the mail to initiate this lawsuit (*see* Doc. 1, pp. 4, 5). Even if the Court went by the date that the complaint was postmarked, which was April 23, 2024, that was just 18 days after the facility received Plaintiff's grievance. While the Illinois Administrative Code does not include a suggested timeframe for the counselor to respond to the grievance, *see* 20 ILL. ADMIN. CODE § 504.810, 504.830 (2017), case law establishes that 13 days (or even 18 days) is not a sufficient amount of time for an inmate to conclude that his attempt to exhaust has been thwarted by the counselor's indefinite delay in responding to the grievance. *See, e.g., Jackson v. Shepherd*, 552 Fed.Appx. 591, 592 (7th Cir. 2014) (inmate failed to exhaust because "the two weeks he gave the prison to respond to his March grievance was insufficient" and "the six weeks that he gave the prison to respond to the purported February grievance also fell short of the recommended 60–day period for the prison to respond."); *Roberson v. Morris*, No. 3:20-CV-1147-MAB, 2022 WL 374921, at *6 (S.D. Ill. Feb. 8, 2022) (inmate failed to exhaust where he filed suit 24 days at most after he submitted grievance to counselor); *Gurley v. Siddiqui,* No. 3:18-CV-473-MAB, 2020 WL 1158178, at *3 (S.D. Ill. Mar. 10, 2020) (inmate failed to exhaust where he filed suit only 24 days after he submitted grievance to counselor, and 16 days after it was received by

counselor). Thus, the April 2024 non-emergency grievance (K19-24-04-41) cannot serve to exhaust Plaintiff's claims in this case because Plaintiff filed suit prematurely without giving the counselor a reasonable time to investigate and respond to the grievance.

Plaintiff contends that the counselor's delay in responding to the grievance—it took just about two months—rendered the process unavailable (Doc. 66, p. 6). But the Court need not consider whether the counselor's delay in responding was sufficiently long to warrant a finding that the grievance process was rendered unavailable because Plaintiff had already filed suit long before the point at which a tardy response becomes an unavailable process.

As for the April 2024 emergency grievance (K19-24-04-34), the Court likewise finds that it was not properly and fully exhausted. It is undisputed that Plaintiff received the grievance back on April 8th after the warden deemed it a non-emergency, but Plaintiff did not resubmit it through the normal grievance process like he was instructed and like the regulations require. Thus, the grievance was not fully exhausted. Furthermore, the Court is unpersuaded by Plaintiff's argument that the warden somehow interfered with Plaintiff's access to the grievance process by deciding the grievance was a non-emergency (Doc. 66, pp. 4–5; *see also* Doc. 73, p. 2). Plaintiff did not cite any case law supporting his argument that, as a general matter, deeming a grievance a non-emergency thwarts the prisoner access to the grievance process (*see* Doc. 66), nor was the Court able to find any in the course of its own research. After all, Plaintiff still had access to the grievance process, just not the emergency, expedited version. Plaintiff also has not submitted any evidence to establish an issue of fact as to whether the emergency grievance process was

a dead end and "not capable of use to obtain relief," like he claims (Doc. 66, pp. 4–5). *See Wallace v. Baldwin*, 55 F.4th 535, 543–44 (7th Cir. 2022) (theorizing that dead end unavailability may be demonstrated by evidence that the plaintiff, or other inmates, previously filed grievances on the same issue with no response); *Dagans v. Cecil*, 2024 WL 3830275 (S.D. Ill. Aug. 15, 2024) (finding that Plaintiff's conclusory allegations that the officers did not respond to his grievances were not enough to demonstrate a dead end).

That leaves the April 9, 2024, grievance filed directly with the ARB. The Court finds that this grievance cannot serve to exhaust Plaintiff's claims because, under the circumstances here, the regulations did not permit Plaintiff to submit a grievance directly to the ARB. *See* 20 ILL. ADMIN. CODE § 504.870.

In conclusion, even though Plaintiff's March 2024 grievances may have gone unaccounted for, he elected to file more grievances on the same issue which the prison received and processed, thereby discovering for himself that remedies remained available. The Court believes, at that point, Plaintiff was obligated to see the grievance process through to the end. He could not abandon the process mid-stream and try to revert to, and rely on, his original grievance that he says went missing. Allowing him to do so would defeat the primary purpose of the PLRA's exhaustion requirement, which is to give the prison administration an opportunity to fix the problem before being subjected to suit in an effort to reduce the crushing number of prisoner lawsuits actually filed. *See, e.g., Porter v. Nussle*, 534 U.S. 516, 525 (2002). Plaintiff, however, either opted not to take all of the necessary steps to fully exhaust his available remedies or failed to allow sufficient time for the process to play out. Either way, he failed to exhaust his

administrative remedies prior to filing suit and Defendants' motion for summary judgment is granted.

CONCLUSION

The motion for summary judgment on the issue of exhaustion filed by Defendant Darren Galloway (Doc. 60) is **GRANTED**. Plaintiff's motion for leave to supplement (Doc. 73) is **DENIED as MOOT**. This action is **DISMISSED without prejudice** due to Plaintiff's failure to exhaust. The Clerk of Court is **DIRECTED** to enter judgment and close this case on the Court's docket.

**IT IS SO ORDERED.**

**DATED: March 31, 2026**

**s/ Mark A. Beatty**
**MARK A. BEATTY**
**United States Magistrate Judge**